Filed 7/12/13; pub. order 8/5/13 (see end of opn.)

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
|     Plaintiff and Respondent, | E053798 |
| v. | (Super.Ct.No. RIF10000870) |
| EUGENE DENMAN, | **OPINION** |
|     Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County. Jean P. Leonard, Judge. Affirmed in part and reversed in part with directions.

Rebecca P. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton, and Sharon L. Rhodes, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant Eugene Denman targeted nine distressed properties in Riverside County by filing quitclaim deeds transferring title to himself despite having no right of ownership or title in the properties.  He also filed homestead declarations for each of the properties making false statements that he was living in them.

Defendant was found guilty of 20 counts of recording false documents and nine counts of perjury.  For each property, the jury found true an enhancement that he damaged the property by clouding title and an additional aggravated white collar crime enhancement that the loss for two or more of the nine properties exceeded $500,000.

Defendant now contends on appeal as follows:

1.      There was insufficient evidence of his convictions pursuant to Penal Code section 115 for filing false documents for the quitclaim deeds he filed.[1]

2.      There was insufficient evidence as a matter of law to prove the loss enhancements under section 12022.6, subdivision (a)(1) and (2).

3.      There was insufficient evidence to prove the aggravated white collar crime enhancement that the losses to the victims exceeded $500,000 under section 186.11, subdivision (a)(1).

4.      He is entitled to additional conduct credits under former section 2933, subdivision (e)(1).

---

[1]      All further statutory references are to the Penal Code unless otherwise indicated.

2

We find that defendant is entitled to additional conduct credits. In addition, the trial court erred by failing to impose a mandatory fine pursuant to section 186.11, subdivision (c). We otherwise affirm the judgment.[2]

I

PROCEDURAL BACKGROUND

This case involves nine different properties located in Riverside County: 8044 Palm View Lane in Riverside (Palm View); 23160 Donahue Court in Riverside (Donahue);[3] 12968 Oak Dale Street in Corona (Oak Dale Street); 7267 Cobble Creek Drive in Corona (Cobble Creek); 5952 Larry Dean Street in Corona (Larry Dean); 6440 Harrow Street in Mira Loma (6440 Harrow); 13721 Amber View in Corona (Amber View); 13704 Star Ruby Avenue in Corona (Star Ruby); and 6443 Harrow Street in Mira Loma (6443 Harrow) (collectively, the properties).

Defendant, who represented himself, was found guilty by a jury of 20 counts of recording false documents (quitclaim deeds and homestead declarations) for the properties within the meaning of section 115 (counts 1, 2, 4, 5, 7, 8, 10, 11, 13, 14, 16,

---

[2]    On July 26, 2012, defendant filed a request to augment the record on appeal or, in the alternative, asked us to take judicial notice of the pretrial writ proceedings in case Nos. E050410, E053798, E050451, E052829, E053224, and E053520. He made this request in order to preserve all of his rights, including his right to seek federal review of his convictions. The People objected to the request. We deemed his request a request for judicial notice. We conclude the records are not relevant to the issues raised on appeal and decline to take judicial notice of the pretrial proceedings. (*People v. Rowland* (1992) 4 Cal.4th 238, 268, fn. 6 [records must be relevant to a material issue].)

[3]    Donahue was also referred to in the record as "Donohue Court." We will use "Donahue."

3

17, 19, 20, 22, 23, 24, 26, 27, 28) and nine counts of perjury within the meaning of section 118 (counts 3, 6, 9, 12, 15, 18, 21, 25, 29).[4] On counts 4, 5, and 6, the jury found true the enhancement that the value of the property taken exceeded $65,000 within the meaning of section 12022.6, subdivision (a)(1). For all remaining counts, the jury found true the enhancement pursuant to section 12022.6, subdivision (a)(2) that the property value was over $200,000. The jury also found the allegation true that defendant engaged in a pattern of related fraudulent conduct that involved the taking of more than $500,000 within the meaning of section 186.11, subdivision (a)(2). In a bifurcated proceeding, defendant admitted serving a prior prison term (§ 667.5, subd. (b)).

Defendant was sentenced to 23 years 8 months in state prison. He was given credit for 502 actual days in custody and 250 days of conduct credit.

II

FACTUAL BACKGROUND

A.   *People's Case-in-Chief*

Riverside County District Attorney's Office Investigator Dan Stack was assigned to investigate real estate fraud in Riverside County. He was contacted by the Riverside County Recorder's office regarding suspicious quitclaim deeds and homestead declarations being filed by defendant. According to Investigator Stack, defendant

---

[4] Defendant filed two homestead declarations on 6443 Harrow and two quitclaim deeds on Star Ruby.

searched the records at the Riverside County Recorder's Office and looked for properties that were in default and for which foreclosure proceedings were being started.

Defendant filed a quitclaim deed and homestead declaration for Palm View on January 19, 2010. Brett Hupe purchased Palm View in late 2009. He fixed it up and found a buyer for the property. He was then informed that someone had moved into the property. The locks had been changed, and the house was full of furniture.

On January 25, 2010, Investigator Stack went to Palm View. The renters in the property had a rental agreement (for $2,000 per month rent) signed with defendant for Palm View. Defendant came to Palm View and told Investigator Stack that he was claiming Palm View under adverse possession. Defendant was suing the owners of Palm View for quiet title of the property. He claimed to be the owner based on his recorded quitclaim deed and homestead declaration. The renters sued Hupe, and he settled with them for $3,500. Hupe eventually sold the house for $400,000.

Defendant filed a quitclaim deed and a homestead declaration for Donahue on January 19, 2010. Barbara Haynes had owned and lived in Donahue for 17 years. She had no idea that defendant had filed a quitclaim deed or homestead declaration against Donahue. According to Haynes, the address on the quitclaim deed and homestead declaration were erroneous because it listed the property in Riverside, when it was in Moreno Valley. However, the parcel number was correct.

Defendant filed quitclaim deeds and homestead declarations for Oak Dale and Cobble Creek on November 4, 2009.

5

Defendant also filed a quitclaim deed and homestead declaration for Larry Dean on November 4, 2009. In 2009, the owner of Larry Dean, Andres Serrano, could no longer afford the home, so he set up a short sale of the property. In November 2009, he found a buyer. Before it was sold, some people started moving into his home. Defendant got a restraining order to keep Serrano out of the property. Defendant told Serrano he had right to the property under section "1800" and emancipation. Serrano could not sell Larry Dean due to the cloud on the property. Serrano contacted Investigator Stack.

Defendant eventually signed a grant deed giving the property back to Serrano. Serrano was eventually able to get the renters out and sell the property.

Defendant filed a quitclaim deed and homestead declaration for 6440 Harrow on November 18, 2009. An investor bought 6440 Harrow in August 2009 for $299,000. The investor had to evict the prior owners. The investor listed it for sale in January 2010. At that time, the investor was informed that the owner of the property was defendant. It took approximately one month in order for the investor to be able to list it for sale and only after a title company agreed to indemnify the investor from any challenge to the title. The property sold in May 2010.

Defendant filed a quitclaim deed and homestead declaration for Amber View on November 3, 2009. In 2009, Amber View's assessed value was $482,000. Amber View was listed for sale in May 2009. A short sale was approved. In November 2009, unauthorized persons moved into the house. They told a Riverside County sheriff's deputy, who was called to the property, that they had rented the property for $2,500 per

month.  The renters gave the deputy a rental agreement showing defendant executed a lease agreement with the renters.  The renters were going to have to be evicted, and the owner of the property could not afford it.  The property could not be sold, and it was foreclosed upon.  Defendant had sued the owner of Amber View for quiet title.

Defendant filed a quitclaim deed and a homestead declaration for Star Ruby on November 18, 2009, and another quitclaim deed on November 25, 2009.  Defendant filed a quitclaim deed and two homestead declarations for 6443 Harrow on November 25, 2009.

An employee of the Riverside County Assessor's Office indicated that properties in Riverside County are assessed for value for determining property taxes.  The assessed values of the properties were displayed to the jury.[5]

For each of the properties, defendant recorded a quitclaim deed attesting that "I, Eugene V. Denman, quit claim to Eugene V. Denman all my rights, title and interest in the real property . . . described as follows . . . ."  He also filed a homestead declaration for each claiming "I am the owner of the land and premises . . . more particularly described as . . . ."  All the homestead declarations were filed under penalty of perjury.

---

[5]      Exhibit 26 contained the assessed values of the properties.  Both parties refer to exhibit 26 in their briefs as evidence of the values of the properties, but did not ask that the exhibit be transferred to this court.  The values of the properties do not otherwise appear in the record.  However, since defendant does not dispute the values of the properties, we will assume that all of the properties (except Donahue) were assessed at over $200,000 and that Donahue was assessed over $65,000.

Investigator Stack called these quitclaim deeds "wild deeds." The wild deeds were not in a chain of title; i.e., they were not granted from one person, who legally had title to the property, to another. Once the quitclaim deed was recorded, it would appear on the title record for the property.

Sharon Grannis was employed by a title company. She also explained that a wild deed was a deed that is filed where the party had no prior recorded interest in the property. When a wild deed was found in the title for a property, it raised a red flag that there may be another interest in the property. A quiet title action would have to be filed by the title company to get the deed off the title. Quitclaim deeds, like the ones filed in this case, would cloud the title.

Defendant listed his address on some of the filings as being in Wilmington. Defendant's parole agent had his address listed as a shelter on Compton Boulevard. He started parole on February 23, 2009. Defendant also had listed the Wilmington address as an address with the parole department. The parties stipulated that the homestead declarations and quitclaim deeds were all signed and executed by defendant.

B.    *Defense*

Defendant testified that he believed the homes were abandoned and that he was just providing shelter to people in need. He thought he was complying with state and federal laws. Defendant mistakenly filed quitclaim deeds on 6440 Harrow and Donahue. Defendant stayed one night at 6443 Harrow; he believed the quitclaim deed allowed him to occupy the premises. He also claimed that he had lived at the Larry Dean location. He

8

had tenants at Star Ruby and Palm View. He filed quiet title actions on some of the properties. Defendant claimed that he either stayed in the properties or had tenants move in to exercise control of the property.

Defendant admitted that he had no claim of title or interest in the properties. He admitted that he had previously been convicted of domestic violence.

## III

## QUITCLAIM DEED AS A FALSE DOCUMENT PURSUANT TO SECTION 115

Defendant contends that his convictions for filing false documents for the quitclaim deeds must be reversed. He claims that since a quitclaim deed only transfers title that a person may or may not have, he could not be found to have filed false documents, as he was not representing that he owned the property, and he had no interest to transfer.

"Our task is clear. 'On appeal we review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence -- that is, evidence that is reasonable, credible, and of solid value -- from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] The standard of review is the same in cases in which the People rely mainly on circumstantial evidence. [Citation.] "Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court[,] which must be convinced of the defendant's guilt beyond a reasonable doubt. '"If the

9

circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment."' [Citations.]" [Citation.]' [Citations.] The conviction shall stand 'unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction]."' [Citation.]" (*People v. Cravens* (2012) 53 Cal.4th 500, 507-508.)

Section 115, subdivision (a) provides as follows: "Every person who knowingly procures or offers any false or forged instrument to be filed, registered, or recorded in any public office within this state, which instrument, if genuine, might be filed, registered or recorded under any law of this state or the United States, is guilty of a felony."

"[S]ection 115 was designed to prevent the recordation of spurious documents knowingly offered for record. [Citation.]" (*Generes v. Justice Court* (1980) 106 Cal.App.3d 678, 681-682 (*Generes*).) "'The core purpose of . . . section 115 is to protect the integrity and reliability of public records.' [Citations.] This purpose is served by an interpretation that prohibits any knowing falsification of public records." (*People v. Feinberg* (1997) 51 Cal.App.4th 1566, 1579.)

In *Generes*, the defendant recorded a grant deed that purported to transfer from herself to herself an easement over land she did not own. After a municipal court denied the defendant's demur to a complaint charging her with violating section 115, she petitioned the superior court for a writ of prohibition. The superior court issued a peremptory writ stating as follows: " . . . 'It appears from the face of the complaint that

10

Defendant filed a document which was exactly what it purported to be: to wit, a deed from herself to herself granting herself an easement over land she did not own. The court does not rule that this conduct is legal. It merely states now that it is not a violation of . . . [s]ection 115.'" (*Generes, supra,* 106 Cal.App.3d at p. 681.)

The People appealed arguing that the trial court applied an overly narrow construction of the word "false." (*Generes, supra,* 106 Cal.App.3d at pp. 681-682.) In reversing the superior court's order, the appellate court stated: "Here the lack of an ownership interest in the land goes to the deception itself. If Generes did not own the interest she purported to convey, the instrument she filed was clearly false. Having no right to grant or convey an easement, her recording of a deed transferring an easement would establish a cloud on the title of those persons who lawfully owned interests in the land. A title searcher encountering the spurious document who acted upon it as genuine would of course be materially deceived." (*Id.* at p. 682.)

In responding to the defendant's claim that a violation of section 115 required a forged instrument the court stated, in pertinent part as follows: "[S]ection 115 differentiates between the two categories, clearly proscribing either a false *or* a forged instrument. Obviously, as in the present case, an instrument may have the effect of defrauding one who acts on it as genuine even though it does not bear a forged signature or otherwise meet the technical requirements of a forged instrument." (*Generes, supra,* 106 Cal.App.3d at p. 682.)

Here, defendant filed quitclaim deeds to himself on property to which he admitted he had no title or interest. While defendant is technically correct that he attested in the quitclaim deed that he was only transferring whatever title or interest he possessed, it was clear based on the evidence he had absolutely no interest in the property. The documents themselves were false in that they transferred an interest that he did not have to himself and then he recorded the document, clouding the title of the true property owners. Adopting defendant's reasoning would be in direct contradiction with the purpose behind section 115 to preserve and protect the integrity of public records. Based on the purpose of the statute and the fact that section 115 has been broadly construed, the quitclaim deeds could reasonably be considered false documents by the jury.

As noted by the trial court, the filing of each document clouds the title. Grannis testified that once a wild deed is found by the title company, it must act upon it and clear the title. A title company, seeing the "spurious" document, would have to act on it. Moreover, in conjunction with the quitclaim deeds, defendant filed false declarations of homestead, when it was clear that he had no interest in the nine properties. It gave the impression that the quitclaim deeds were valid and that defendant actually possessed the properties.

Defendant asks this court to narrowly construe section 115 and find that he did not technically make any false statements on the quitclaim deeds because such deeds only transfer whatever interest he possessed. "It is well recognized that a quitclaim deed is a distinct form of conveyance and operates like any other deed inasmuch as it passes

12

whatever title or interest the grantor has in the property. [Citations.] It is equally settled that the form of the instrument creates a presumption that the title to the property is held as shown in the instrument." (*In re Marriage of Broderick* (1989) 209 Cal.App.3d 489, 496.) Defendant argues that although there is a "presumption" that the quitclaim deed transfers some interest or title, it does not actually transfer any interest. While we may agree with defendant that this true, the evidence here overwhelmingly showed that defendant only filed the quitclaim deeds in order to cloud title and to unlawfully gain possession of the property. This is akin to the actions in *Generes*.

The purpose of section 115 -- to preserve the integrity of public documents -- is served by finding the quitclaim deeds in this case were false documents. As such, we affirm the judgment of the jury in finding him guilty of section 115 for each of the quitclaim deeds that he filed.

IV

INSUFFICIENT EVIDENCE OF VIOLATIONS OF SUBDIVISION (A)(1) AND (2)

OF SECTION 12022.6

Defendant contends that the evidence was insufficient to find him guilty of violating section 12022.6, subdivision (a)(1) (loss of more than $65,000) and (2) (loss of more than $200,000), because there was no evidence that the victims' losses exceeded these statutory amounts. We have set forth the standard of review for sufficiency of the evidence claims, *ante*.

13

Section 12022.6, subdivision (a) states: "When any person *takes, damages, or destroys* any property in the commission or attempted commission of a felony, with the intent to cause that taking, damage, or destruction, the court shall impose an additional term as follows: [¶] (1) If the loss exceeds sixty-five thousand dollars ($65,000), the court, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which the defendant has been convicted, shall impose an additional term of one year." (Italics added.) Under subdivision (a)(2), a sentence of two years shall be imposed if the amount exceeds $200,000. Subdivision (b) provides that "[i]n any accusatory pleading involving multiple charges of taking, damage, or destruction, the additional terms provided in this section may be imposed if the aggregate loses to the victims from all felonies exceeded the amounts specified in this section and arise from a common scheme or plan."

In discussing the jury instructions and defending the section 1118.1 motion, the People made clear it was only proceeding on the theory that there was damage to the title and not a taking. The People did not discuss a theory under section 12022.6, subdivision (b) of a common plan or scheme. In closing, the People argued that defendant damaged the title for each of the properties. His intent was shown by filing quiet title actions that he hoped the owners could not defend.[6]

---

[6] On appeal, the People appear to argue a taking of the properties. But the trial court and the People both stated that the issue was damage to the property.

14

In *People v. Beaver* (2010) 186 Cal.App.4th 107, the court found that "[section 12022.6] applies to any felony that causes a taking, damage or destruction of property. Furthermore, as to defendant's argument that the calculation of the value of property involved in the felony is limited to what the defendant received, rather than what the victim lost, this is incorrect. The inclusion of property that has either been 'damage[d]" or "destroy[ed]' in the calculation demonstrates a clear intent that the emphasis is on what the victim lost, not what the defendant gained." (*Id.* at p. 118.)

"'[T]he Legislature did not intend that the application of section 12022.6 should depend upon the fortuitous circumstances of whether the police were able to recover stolen property or the victim was able to establish a civil claim . . . .' [Citation.]" (*People v. Frederick* (2006) 142 Cal.App.4th 400, 422.) In *People v. Ramirez* (1980) 109 Cal.App.3d 529, the court rejected the defendants' argument that section 12022.6 applied "only if the victim's ultimate out-of-pocket loss exceeds" the statutory amount. (*Ramirez*, at p. 539.) "To interpret the statute in the manner suggested by appellants would be to attribute to the Legislature an intent to depart radically from well-established law that the recovery of stolen property by the victim is no defense to crime and is only relevant in mitigation of punishment when the defendant voluntarily returns it prior to being charged." (*Ibid*.)

Here, Grannis testified that if a cloud on title was found, the issue would have to be investigated. The title company would not insure the property if a wild deed existed. For example, for a time, the investor in 6440 Harrow was unable to get the title company

15

to insure title, and therefore no sale could occur, because of the wild deed on the property. Serrano could not sell Larry Dean because of the cloud on title. The owner of Amber View could not sell the property because of the cloud on title, and it was foreclosed upon. Further, a title company would have to file a quiet title action to clear title. Hence, based on the wild deeds, the true owners of the property could not liquidate or sell their properties. As such, the loss at the time based on the cloud on title was a total loss of the value of the property.

Defendant contends he could not take the properties because he had no title or interest in the properties, since he possessed no interest under the quitclaim deeds. However, the People proceeded on a theory that defendant *damaged* the properties by clouding title, not that he took the properties. Section 12022.6 does not define damage.[7] The ordinary meaning of damage is "loss or harm resulting from injury to person, property, or reputation." (Webster's 9th New Collegiate Dict. (1991) p. 323.) Here, by not being able to sell their properties because of the cloud on title, each of the victims suffered loss of the assessed value of their property.

Defendant claims that "it is the loss incurred, not the total value of the property itself, that must be measured to determine if the enhancement applied." However, as noted, *ante*, with the cloud on title, the owners could not sell or liquidate their properties. As such, at the time that he filed the quitclaim deeds and homestead declarations, the true

---

**7** As noted in *People v. Ramirez, supra,* 109 Cal.App.3d at p. 539, there is no legislative history that is helpful in construing the intent of the statute.

property owners could not sell their properties. They suffered a total loss that equaled the assessed value of the property. Defendant makes no claim the assessor's testimony regarding the value of the properties was erroneous. Even though most of the property owners were later able to clear title and sell the properties, this does not signify there was insufficient evidence of the enhancement.

Although not raised by the defendant, we note that the jury was not properly instructed on the enhancement under section 12022.6, subdivision (a)(1) for counts 4, 5, and 6. Under subdivision (a)(1), the loss of the property need only be $65,000. On counts 4, 5, and 6, defendant was only charged with taking or damaging $65,000 worth of property. Presumably, exhibit 26 only provided evidence that the value of the property was greater than $65,000, but not greater than $200,000. However, the jury was instructed that it need find that the property taken, damaged, or destroyed was greater than 200,000 for all counts.

When the trial court gives an incorrect or incomplete instruction that allegedly affects the substantial rights of a defendant, it is reviewable even if no objection was raised in the trial court. (§ 1259; see *People v. Hudson* (2006) 38 Cal.4th 1002, 1011-1012 [no forfeiture when "trial court gives an instruction that is an incorrect statement of the law]".) However, jury instructions must be considered in light of the entire record to determine whether it is reasonably likely the jury was misled. (See *People v. Cross* (2008) 45 Cal.4th 58, 67-68.)

17

Here, the jury verdict form did state that the amount of loss need only be $65,000. We conclude the jury would have understood its duty was to determine for counts 4, 5, and 6 that the value of the property was greater than $65,000, not $200,000. (See *People v. Hughes* (2002) 27 Cal.4th 287, 377 [instructions read together with the verdict form evidenced a proper finding by the jury].)

Based on the foregoing, ample evidence supported that defendant damaged the properties in an amount exceeding $200,000 for all counts except counts 4, 5, and 6, which were supported by evidence that the amount exceeded $65,000.

V

TAKING OF GREATER THAN $500,000 PURSUANT TO

SECTION 186.11, SUBDVISION (A)(2)

Similar to defendant's previous contention, he claims he could not be found guilty of violating section 186.11, subdivision (a)(2), the aggravated white collar crime enhancement, because he "took nothing," and therefore the losses to the victims did not exceed $500,000.

Section 186.11, subdivision (a)(1), as it read at the time that defendant recorded the quitclaim deeds and homestead declarations, provides in pertinent part as follows: "Any person who commits two or more related felonies, a material element of which is fraud or embezzlement, which involves a pattern of related felony conduct, and the pattern of related felony conduct involves the taking of, *or results in the loss by another person or entity of, more than one hundred thousand dollars ($100,000)*, shall be

18

punished, upon conviction of two or more felonies in a single criminal proceeding, in addition and consecutive to the punishment prescribed for the felony offenses of which he or she has been convicted, by an additional term of imprisonment in the state prison as specified in paragraph (2) or (3). This enhancement shall be known as the aggravated white collar crime enhancement. The aggravated white collar crime enhancement shall only be imposed once in a single criminal proceeding." (Stats. 2007, ch. 408, § 1, italics added.) Subdivision (a)(2) provides for a two, three, or five year prison sentence if the amount of loss or taking exceeds $500,000.

"The purpose of the aggravated white collar crime enhancement [is] to provide a mechanism for greater punishment for criminals who engage in a pattern of fraudulent activity that results in a large amount of accumulated takings." (*People v. Williams* (2004) 118 Cal.App.4th 735, 747.)

As we found in the preceding section, the evidence supported that each of the owners of the properties suffered a loss of the value of the property of greater than $200,000 (except counts 4, 5, and 6). As such, the evidence here is substantial to support the enhancement that the total aggregated loss for two or more counts exceeded $500,000.

## VI

## CONDUCT CREDITS

Defendant argues in his opening brief that he is entitled to additional conduct credits. Defendant was in custody from February 22, 2010, until July 8, 2011. Defendant

19

spent 502 actual days in custody, and the trial court granted him 250 days of local custody credit pursuant to section 4019, for a total of 752 days. Defendant claims he was entitled to calculation of credits under former section 2933, subdivision (e)(1), as it was amended effective September 28, 2010, for the entire period, which would have given him "day-for-day credits" for a total of 502 days of conduct credit. (Former § 2933, subd. (e)(1), added by Stats. 2010, ch. 426, § 1, eff. Sept. 28, 2010, and repealed by Stats. 2011, 1st Ex.Sess., 2011–2012, ch. 12, § 16, eff. Sept. 21, 2011.)

The People agree that defendant is entitled to additional conduct credits. However, they contend that defendant is entitled to credits for the period from February 22, 2010, through September 27, 2010, under former section 4019, effective January 25, 2010, which allows for two days of conduct credit for every two days spent in local custody. (*People v. Brown* (2012) 54 Cal.4th 314, 318, 320 (*Brown*). They agree with defendant that for the period from September 28, 2010, through July 8, 2011, he is entitled to conduct credits under former section 2933, subdivision (e)(1).

A defendant is entitled to actual custody credit for "all days of custody" in county jail. (§ 2900.5, subd. (a); see also *People v. Smith* (1989) 211 Cal.App.3d 523, 526.) Calculation of custody credit begins on the day of arrest and continues through the day of sentencing. (*People v. Bravo* (1990) 219 Cal.App.3d 729, 735.)

20

The California Supreme Court decided *Brown, supra,* 54 Cal.4th 314, after defendant filed his opening brief.[8] In *Brown*, the high court reviewed the application of the amendment of former section 4019 and concluded the amendment applied prospectively only and that prisoners could earn credits at a different rates if their prison terms overlapped the effective dates of section 4019. (*Brown,* at pp. 322-323.)

Subdivision (e)(1) of former section 2933, in effect when defendant was sentenced on July 8, 2011, read: "Notwithstanding Section 4019 and subject to the limitations of this subdivision, a prisoner sentenced to the state prison under Section 1170 for whom the sentence is executed shall have one day deducted from his or her period of confinement for every day he or she served in a county jail, city jail, industrial farm, or road camp from the date of arrest until state prison credits pursuant to this article are applicable to the prisoner." Like the revised version of section 4019 analyzed in *Brown*, the former subdivision of section 2933 contained no express statement of retroactivity.

Subdivision (e)(3) of former section 2933 provided that conduct credits were to be calculated under section 4019 only if the prisoner was required to register as a sex offender; was committed for a serious felony, as defined in section 1192.7; or had a prior conviction for a serious felony as defined in section 1192.7 or a violent felony as defined in section 667.5. None of the specified exceptions applies to defendant. (Former § 2933, subd. (e)(3).)

---

[8]     Defendant filed his opening brief on April 30, 2012, and *Brown* was decided in June 2012. Defendant acknowledges *Brown* in his reply brief.

21

Hence, for that one-year period -- September 28, 2010 until September 21, 2011 -- section 2933, subdivisions (e)(1) and (e)(3) was operative. (*Brown, supra,* 54 Cal.4th at p. 321, fn. 8.) We agree with the People that defendant is entitled to credits for the period from February 22, 2010, through September 27, 2010, under former section 4019, which allows for two days of conduct credit for every two days spent in local custody. We also agree that from September 28, 2010, through July 8, 2011, defendant is entitled to one day for each day conduct credits under former section 2933, subdivision (e)(1). Since, as we discuss, *post*, we are remanding this case for the trial court to impose a fine under section 186.11, subdivision (c), we will leave it to the trial court to recalculate the conduct credits in accordance with this opinion.

We note that there may be some confusion as to whether the trial court can award former section 2933, subdivision (e)(1) conduct credits. In a footnote, the *Brown* court discussed a new argument made by defendant in his answering brief that former section 2933 entitled him to additional conduct credits even if section 4019 did not apply to him, and that the California Department of Corrections and Rehabilitation (CDCR) committed error by failing to award credits under former section 2933, subdivision (e)(1). The high court found the claim untimely but added, "Such a claim must logically be brought in a petition for habeas corpus against the official empowered to award such credits, namely the Director of the CDCR." (*Brown, supra*, 54 Cal.4th at p. 322, fn. 11.)

In *People v. Tinker* (2013) 212 Cal.App.4th 1502, the Attorney General argued that the trial court could not award the former section 2933, subdivision (e)(1) conduct

22

credits relying on footnote 11 of *Brown*. (*Tinker*, at pp. 1507-1508.) The court stated, "The Attorney General reads far too much into this footnote. In *Brown*, the prisoner had been sentenced by the trial court in 2007, the same year he had served his presentence custody time. The 'judgment on review' was the Court of Appeal's 2010 judgment regarding his claim that he was entitled to retroactive conduct credit under the January 2010 version of section 4019. He did not contend that the Court of Appeal (or the trial court) had somehow erred by failing to apply former section 2933, subdivision (e), which did not become operative until after the Court of Appeal's decision. Instead, he contended that *the CDCR* had violated former section 2933, subdivision (e). Hence, the California Supreme Court reasonably concluded that such a claim was not properly before it on review of the Court of Appeal's judgment." (*Id.* at p. 1508.)

The *Tinker* court concluded that the issue of the correct award of conduct credit was on direct review and it also concluded that trial court had the authority to calculate the credits. (*People v. Tinker*, *supra*, 212 Cal.App.4th at pp. 1508-1509.) We believe the reasoning in *Tinker* is sound and find the trial court can calculate the conduct credits upon remand under both former sections 2933, subdivision (e)(1) and 4019.

## VII

## FINE PURSANT TO SECTION 186.11, SUBDIVISION (C)

The People argue, despite not filing an appeal and failing to object below, that the trial court erred by failing to impose a fine pursuant to section 186.11, subdivision (c). Defendant agrees that the fine is mandatory but disputes the amount of the fine that

23

should be imposed.  He requests remand for the trial court to impose the fine.  We agree remand is appropriate for imposition of the fine.

Subdivision (c) of section 186.11 provides as follows:  "Any person convicted of two or more felonies, as specified in subdivision (a), shall also be liable for a fine not to exceed five hundred thousand dollars ($500,000) or double the value of the taking, whichever is greater, if the existence of facts that would make the person subject to the aggravated white collar crime enhancement have been admitted or found to be true by the trier of fact.  However, if the pattern of related felony conduct involves the taking of more than one hundred thousand dollars ($100,000), but not more than five hundred thousand dollars ($500,000), the fine shall not exceed one hundred thousand dollars ($100,000) or double the value of the taking, whichever is greater."

"Section 186.11, subdivision (c) *requires imposition* of a specified fine, if the defendant is 'convicted of two or more felonies, as specified in subdivision (a),' and the jury finds true the section 186.11, subdivision (a) allegation."  (*People v. Lai* (2006) 138 Cal.App.4th 1227, 1251, italics added, fn. omitted.)  A trial court's failure to impose a fine in the mandatory amount constitutes an unauthorized sentence.

Here, the jury found the enhancements under 12022.6, subdivision (a)(1) and (a)(2) true.  As such, the imposition of a fine was mandatory, and the failure of the trial court to impose the fine constitutes an unauthorized sentence.  We therefore will remand the matter to allow the trial court to determine and impose the appropriate fine pursuant to section 186.11, subdivision (c).

24

## VIII

## DISPOSITION

The matter is remanded for the trial court to impose the mandatory restitution fine under section 186.11, subdivision (c).  In addition, we direct the trial court to recalculate the number of days of presentence conduct credit in accordance with this opinion.  The trial court shall then order that an amended abstract of judgment be prepared and forwarded to the Department of Corrections and Rehabilitation.  In all other respects, the judgment is affirmed.


RICHLI_____
                                                                                        J.


We concur:


HOLLENHORST_____
                    Acting P. J.


McKINSTER_____
                    J.


25

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
## FOURTH APPELLATE DISTRICT
## DIVISION TWO

THE PEOPLE,

    Plaintiff and Respondent,

v.

EUGENE DENMAN,

    Defendant and Appellant.

E053798

(Super.Ct.No. RIF10000870)

ORDER GRANTING
PUBLICATION

The request for publication of the opinion filed on July 12, 2013 is GRANTED. The opinion meets the standard for publication as specified in California Rules of Court, rule 8.1105(c).  It is ORDERED that the opinion filed in this matter on July 12, 2013, be certified for publication.

                        RICHLI
                                     J.

We concur:


HOLLENHORST
        Acting P. J.


McKINSTER
        J.