Filed 6/26/15  P. v. Johnson CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B257756 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. SA085768) |
| v. | |
| DAYQUON DEANDRE JOHNSON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Kathryn A. Solorzano, Judge.  Affirmed with modifications.

George W. Taylor, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr., and Stephanie A. Miyoshi, Deputy Attorneys General, for Plaintiff and Respondent.

* * * * * *

We modify defendant Dayquon Deandre Johnson's custody credits and affirm his conviction for robbery.  We reject his contention that the court erred in refusing to instruct jurors on the lesser included offense of theft because no evidence supported the theory that he committed only a theft.

## FACTS AND PROCEDURE

### 1. *Defendant Was Convicted of One Count of Robbery*

During the night of November 15, 2013, 19-year old defendant was with three companions—Tre McGhee (also known as Lionel Hunt), Aaron C., and K.H.  The four demanded money from several pedestrians.  K.H. brandished a gun, which appeared real but was actually a toy.  Defendant and all of the victims believed it was real when K.H. brandished it.  Defendant learned the gun was not real only after he was arrested.

At trial, defendant admitted that he was present while his companions tried to rob several people.  Defendant admitted that prior to accompanying them, he heard the others talk about committing robberies and knew someone had a gun.  He testified he went along with the others to "make sure they were okay, that they wouldn't hurt anybody."  He testified he tried to discourage the others from committing the robberies.

Hans Kohansion, one of the victims, was walking with his wife in Beverly Hills about 9:30 p.m. on November 15, 2013.  A group of people including defendant surrounded them.  K.H. pointed his gun at Kohansion while demanding that Kohansion "empty [his] pockets."  K.H.—whose face was covered—stood about two feet from Kohansion as he brandished the gun.  When he heard the demand, Kohansion believed he did not have his wallet because he generally did not carry it on Friday nights in observance of the Sabbath.  When defendant pointed out that there was a bulge in his pocket, Kohansion realized he had his wallet and threw the wallet into nearby grass.  Defendant retrieved it.  After defendant picked up Kohansion's wallet, he and his three companions left together.

With respect to the robbery of Hans Kohansion, defendant initially testified he did not say anything to aid the robbery.  But, during cross-examination defendant admitted that he pointed to Kohansion's wallet as K.H. was holding a gun.  Defendant also

2

admitted taking Kohansion's wallet. He testified that he did not know why he picked up the wallet. Defendant dropped the wallet after he heard someone scream. When he heard the scream "it kind of woke me up . . . it made me realize that I was taking something that wasn't mine, and that I wouldn't want anybody to take anything from me."

Defendant testified that shortly before the robbery, he had smoked marijuana and taken Xanax, causing him to feel "different." A defense expert testified that Xanax can disrupt normal brain function and impair memory.[1]

Defendant was convicted of one count of second degree robbery and sentenced to the low term of two years.

## 2. Defendant Was Acquitted of Other Crimes

Defendant was charged with several other crimes, arising out of conduct that also occurred on November 15, 2013. Defendant argues the incidents occurred in the following order: conversation with girls in which one person pointed a gun at one of the girls; attempt to obtain money from Charles Wiesel, attempt to obtain money from Joseph Van Arsdale and Rachel Strickland, and then the robbery of Kohansion, which was described above.

Defendant testified that he was not with his friends for the first incident when they approached the girls.

Defendant was with K.H., McGhee, and Aaron when the four young men stopped Rachel Strickland and Joseph Van Arsdale to demand money. Strickland and Van Arsdale were walking about 9:00 or 9:30 p.m. on November 15, 2013. According to defendant, the confrontation started when Van Arsdale used a racial slur, but both Strickland and Van Arsdale denied Van Arsdale said anything to defendant other than that he had startled them. K.H. pointed a gun at Van Arsdale and demanded his money. Van Arsdale did not have any money and said that. He also pointed the gun at Strickland

---

[1]     Several character witnesses testified that defendant's conduct on November 13, 2015, was out of character. He was a good student, graduated from high school, and overcame several familial challenges. He had no prior arrests or convictions.

3

and demanded her money or wallet. Van Arsdale begged for his life, and eventually the four companions left together without harming Van Arsdale or Strickland.

Defendant also was with his companions when they tried to rob Charles Wiesel about 9:30 the same night. Wiesel was with his then 12-year-old son. Wiesel testified four people approached him and his son, put a gun to his head, and demanded his money. Wiesel responded that he was not allowed to carry money on a Friday night. One of the people demanded Wiesel empty his pockets, and Wiesel did. Wiesel was afraid.

Defendant was acquitted of all of the charges stemming from the incidents prior to the robbery of Kohansian.

## DISCUSSION

### 1. Alleged Instructional Error

Defendant argues the trial court should have instructed jurors on theft. He argues that there was evidence that he did not form the intent to steal until after force or fear was used in taking Kohansion's property.

" ' "The trial court is obligated to instruct the jury on all general principles of law relevant to the issues raised by the evidence, whether or not the defendant makes a formal request." [Citations.] "That obligation encompasses instructions on lesser included offenses if there is evidence that, if accepted by the trier of fact, would absolve the defendant of guilt of the greater offense but not of the lesser." [Citations.]' [Citations.] 'Nevertheless, "the existence of '*any* evidence, no matter how weak' will not justify instructions on a lesser included offense . . . ." [Citation.] Such instructions are required only where there is "substantial evidence" from which a rational jury could conclude that the defendant committed the lesser offense, and that he is not guilty of the greater offense.' " (*People v. Whalen* (2013) 56 Cal.4th 1, 68.)

"Robbery is 'the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear.' ([Pen. Code,] § 211.) In general, theft is the felonious taking, carrying, stealing, leading, or driving away of the personal property of another, or the appropriation of property, labor or money by fraudulent means. ([Pen. Code,] § 484.)

4

'The greater offense of robbery includes all of the elements of theft, with the additional element of a taking by force or fear. [Citation.] If the defendant does not harbor the intent to take property from the possessor at the time he applies force or fear, the taking is only a theft, not a robbery.' " (*People v. Whalen, supra*, 56 Cal.4th at p. 69.)

No evidence supported a theft instruction and the trial court properly refused to give that instruction. Defendant took Kohansion's wallet that he obtained when K.H. pointed a gun at Kohansion. Both K.H. and defendant demanded Kohansion empty his pockets. The use of the gun to obtain the wallet supported only the conclusion that the wallet was obtained through force or fear, the element distinguishing robbery and theft. Because defendant obtained the wallet through force or fear the crime was a robbery. The only reasonable inference is that Kohansion threw his wallet because he was threatened at gunpoint by defendant's companion. Defendant took the wallet and the four boys left together. Defendant's testimony that he took Xanax and smoked marijuana and that he went along with his companions to make sure no one was hurt does not support the inference that he committed only a theft because it does not contradict the evidence that a gun was used to force Kohansion to give up his wallet.

Defendant cites *People v. Turner* in which our Supreme Court reiterated the following rule: "[W]hen the intent to steal arose only after force was used, the offense is theft, not robbery." (*People v. Turner* (1990) 50 Cal.3d 668, 688.) In *Turner*, the defendant unsuccessfully argued that he did not form the intent to take the victim's property until after he killed the victim. (*Ibid*.) *Turner* does not assist defendant. Here the only force used was to take Kohansion's property. Kohansion gave up his wallet because he was threatened at gunpoint by K.H. and surrounded by K.H.'s companions including defendant. The force was used to obtain the wallet, not for any other purpose.

## 2. Custody Credits

The trial court awarded defendant 278 days of custody credit and he argues the court should have awarded him 279 days. It appears defendant is correct and respondent does not argue otherwise.

5

Defendant was arrested on November 15, 2013, and sentenced on July 15, 2014. He was entitled to 243 days of actual custody credits. (*People v. Denman* (2013) 218 Cal.App.4th 800, 814 ["Calculation of custody credit begins on the day of arrest and continues through the day of sentencing."].) He should have received 15 percent presentence conduct credits under Penal Code section 2933.1, which limits presentence conduct credit for persons convicted of felony offenses listed in Penal Code section 667.5 to 15 percent. (§ 2933.1, subd. (a).) Robbery is listed in section 667.5, subdivision (c)(9). As the parties agree, defendant should have been awarded 36 days of conduct credit, for a total of 279 days.

## DISPOSITION

The superior court is directed to modify the abstract of judgment to reflect that defendant is entitled to 279 days of custody credit. The superior court shall then forward the amended abstract of judgment to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.


FLIER, J.

WE CONCUR:


BIGELOW, P. J.


RUBIN, J.

6