Filed 5/2/19; Certified for Publication 5/22/19 (order attached)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>YOLANDA ASTORGA-LIDER,<br><br>    Defendant;<br><br>SUNIL DEO,<br><br>    Real Party in Interest and Appellant. | D073992<br><br><br><br>(Super. Ct. No. SCD266414) |

APPEAL from an order of the Superior Court of San Diego County, Howard H. Shore, Judge. Affirmed.

Garrett & Tully, Ryan C. Squire and Jennifer R. Slater, for Real Party in Interest and Appellant.

Summer Stephan, District Attorney, Mark A. Amador, and Valerie Tanney, Deputy District Attorneys, for the Plaintiff and Respondent.

Yolanda Astorga-Lider pled guilty to six felony counts, including two counts of violating Penal Code[1] section 115, subdivision (a). One of those counts, grand theft (§ 487; count 6), involved Astorga-Lider encumbering certain real property, purchased by Nohemi and Jose Lorenzana,[2] with a fraudulent deed of trust. The subject deed of trust listed Sunil Deo as the lender.

After Astorga-Lider's guilty plea, the People moved, under section 115, subdivision (e), for an order declaring certain record instruments void, including the deed of trust listing Deo as the lender (Deo Deed of Trust). After multiple rounds of briefing as well as considering evidence and information submitted in support of and opposition to the People's motion, the superior court granted the motion. In doing so, the court found the Deo Deed of Trust void.

Deo appeals the order declaring the Deo Deed of Trust void, contending the People's motion was procedurally improper; the Deo Deed of Trust is not a false or forged document under section 115; at most, the Deo Deed of Trust is voidable, not void; civil court, not criminal court, is the appropriate forum for adjudication of the validity of the Deo Deed of Trust; Deo's due process rights have been violated; and the order voiding the Deo Deed of Trust constitutes an unlawful taking. We conclude Deo's arguments are without merit. Therefore, we affirm.

---

[1]    Statutory references are to the Penal Code unless otherwise specified.

[2]    We refer to Nohemi and Jose by their respective first names to avoid confusion. Additionally, we refer to Nohemi and Jose together as the Lorenzanas.

FACTUAL AND PROCEDURAL BACKGROUND

*Astorga-Lider's Scheme*

In December 2013, Nicolas and Elizabeth Corral owned their home, free and clear of any liens, located at 1837 Via Encantadoras, San Ysidro. They also owned apartments located at 3737 Sunset Lane, San Ysidro (Sunset Lane Apartments), together with Nicolas's brother. The Corrals and their daughter, Nohemi, knew Astorga-Lider since she was a child. Astorga-Lider claimed to be knowledgeable about the real estate industry.

The Lorenzanas could not afford to buy a home; thus, they were living with Nohemi's parents until they could save money for a down-payment and improve their credit. Astorga-Lider suggested a plan to the Lorenzanas and the Corrals, which would allow the Lorenzanas to purchase a home. The Corrals could obtain a $350,000 real estate loan, borrowed against the Sunset Lane Apartments and give the loan proceeds to the Lorenzanas. In turn, the Lorenzanas could use the proceeds to buy a home while making payments on the $350,000 loan. The Corrals and Lorenzanas agreed to the plan.

The Corrals therefore initiated a $350,000 loan with Bank of the Internet. The loan proceeds were deposited into the Corrals' bank account. Soon after the proceeds were deposited, the Corrals transferred the money to the Lorenzanas' account. The Lorenzanas intended to use the money to pay cash for a home located at 3363 Wittman Way, San Ysidro (Wittman Property). Per their agreement with the Corrals, the Lorenzanas made the payments on the Corrals' loan with Bank of the Internet.

The Lorenzanas finalized what they believed to be an all-cash purchase of the Wittman Property. As such, they wired $360,000 in purchase money to what they

3

believed to be the appropriate account to make the purchase. To this end, Astorga-Lider accompanied the Lorenzanas to the bank and provided the transfer information to the bank. Unbeknownst to the Lorenzanas, the account number Astorga-Lider provided the bank was for an account that she controlled and used to funnel stolen funds from multiple fraudulent loans.

While the Lorenzanas believed they were purchasing the Wittman Property through the wire transfer, Astorga-Lider took steps to continue her illicit scheme. She contacted the escrow company associated with the closing of the Wittman Property, and without the Lorenzanas' knowledge, she changed the transaction from a cash purchase transaction to a loan purchase transaction. Astorga-Lider then applied for a hard-money $275,000 loan in the Lorenzanas' names with Deo, again without the Lorenzanas' knowledge and consent. To secure the loan from Deo, she used Michael Leiby, a mortgage broker that she had utilized for other fraudulent loans. The Lorenzanas signed several documents associated with the loan from Deo, including the Deo Deed of Trust, but they were not aware that they were signing loan documents for a new loan. Instead, they believed they were signing documents to consummate their cash purchase of the Wittman Property.

After causing the $360,000 to be wired to an account she controlled, Astorga-Lider wired a small portion of these funds to escrow as a down payment for the Lorenzanas' purchase of the Wittman Property. She caused the rest of the purchase price to be paid by the Deo loan. The Lorenzanas never received any notices about the Deo loan. To conceal the loan from the Lorenzanas, Astorga-Lider listed her own office

4

address as the Lorenzanas' address so notices would be sent to her and not the Lorenzanas.

Astorga-Lider's deceit was not limited to the Lorenzanas. After the Corrals had applied for the loan with Bank of the Internet, Astorga-Lider used their identities, without their knowledge, to apply for a second loan in their names for $380,000 with hard-money lender True Gem. Astorga-Lider had these loan proceeds deposited into an account she used for funneling stolen funds. To hide her actions from the Corrals, Astorga-Lider caused the final closing statement to be sent to her. She also made payments on the True Gem loan. The Corrals never received any payment notices for this loan. The Corrals only intended to take out a single loan for $350,000 with Bank of the Internet. They did not intend to or knowingly take out a second loan with True Gem for $380,000.

The Corrals and Lorenzanas did not discover the fraudulent True Gem and Deo loans until Victor Ray, an investigator from the district attorney's office, uncovered Astorga-Lider's scheme and found the loans and corresponding deeds of trust . When Ray contacted the Lorenzanas about the Deo loan and deed of trust, the Lorenzanas knew nothing about any loan in their name secured by the Wittman Property. They believed they had used the proceeds of the Corrals' loan with Bank of the Internet to purchase the Wittman Property.

### Astorga-Lider's Plea

The grand jury indicted Astorga-Lider on 42 felony counts for taking over $3.2 million in her home loan scheme. Seven of these counts were related to the loans with True Gem and Deo. Fifteen of the counts were for violations of section 115, subdivision

5

(a), and two of those counts involved Astorga-Lider causing the deeds of trust relating to the True Gem and Deo loans to be recorded.

Ultimately, Astorga-Lider pled guilty to six felony counts, including two counts of violating section 115, subdivision (a).[3] She stipulated to a prison sentence of 11 years. She also stipulated to the grand jury transcript as the factual basis for her plea and entered a *Harvey*[4] wavier. Among other counts, Astorga-Lider pled guilty to count 6, for grand theft (§ 487) for encumbering the Wittman Property with the fraudulent Deo Deed of Trust.

*The People's Motion to Void the Deo Deed of Trust*

On November 8, 2017, almost two months after Astorga-Lider pled guilty, the People moved for an order declaring certain recorded instruments void under section 115, subdivision (e). As part of that motion, the People sought to void the Deo Deed of Trust. The motion was supported by the grand jury transcript, Astorga-Lider's guilty plea, and Astorga-Lider's stipulation to the grand jury transcript as the factual basis for her guilty plea.

On January 23, 2018, an attorney representing Deo in a civil quiet title action, took the deposition of the Lorenzanas. Seven days later, Deo filed an opposition to the

---

3     Section 115, subdivision (a) provides:  " Every person who knowingly procures or offers any false or forged instrument to be filed, registered, or recorded in any public office within this state, which instrument, if genuine, might be filed, registered, or recorded under any law of this state or of the United States, is guilty of a felony."

4     *People v. Harvey* (1979) 25 Cal.3d 754.

6

People's motion.  In support of the opposition, Deo attached excerpts of the deposition transcripts of the Lorenzanas as well as loan documentation.

The People filed a reply brief in which they asked the superior court to take judicial notice of, among other things, Astorga-Lider's guilty plea, the grand jury transcripts as well as their accompanying exhibits, and the search warrant returns.

On February 13, 2018, the superior court held a hearing on the People's motion. The court took the matter under submission and gave the parties additional time to submit supplemental briefs.  Both Deo and the People submitted further briefs.

The court subsequently granted the People's motion, declaring the Deo Deed of Trust void (in addition to other recorded instruments).  Deo timely appealed.

DISCUSSION

I

DEO'S PROCEDURAL CHALLENGE TO THE PEOPLE'S MOTION

Deo contends the superior erred in granting the People's motion and declaring the Deo Deed of Trust void because the motion was procedurally improper.  Specifically, Deo asserts the People did not serve him with a copy of the written motion and a notice of hearing by certified mail as required under section 115, subdivision (f)(7).  Further, Deo insists he was not served with a notice of hearing, even by regular mail, and as such, he did not receive a notice of hearing listing the street address and the legal description of the Wittman Property.

The People concede that they did not serve their motion by certified mail but emphasize that Deo does not claim he was unaware of the motion or that the People were

7

asking the court to declare the Deo Deed of Trust void. They also argue that they included the Wittman Property address in their moving papers along with the recordation number of the Deo Deed of Trust, which contained a legal description of the property. In other words, the People argue that Deo had notice of their motion and was not prejudiced by any procedural deficiencies.

We agree with the People. The record is clear that Deo had actual notice of the People's motion and that the motion was aimed, in part, at voiding the Deo Deed of Trust. Indeed, Deo extensively litigated the issue, filing an opposition and evidence in support of that opposition, challenging evidence submitted by the People, appearing at a hearing on the motion, and submitting a supplemental brief. Deo does not claim any prejudice based on the People's failure to serve the motion by certified mail. He does not point to any argument he was unable to make. Accordingly, it would be a waste of judicial economy and resources to reverse the superior court's order on this highly technical ground, only to have the parties make the same arguments below. Therefore, we determine Deo's claim of procedural improprieties is without merit.

II

THE DETERMINATION THAT THE DEO DEED OF TRUST IS VOID

The People moved under section 115, subdivision (e)(1) for an order declaring the Deo Deed of Trust void. That subdivision provides:

> "After a person is convicted of a violation of this section, or a plea is
> entered whereby a charge alleging a violation of this section is
> dismissed and waiver is obtained pursuant to *People v. Harvey*
> (1979) 25 Cal.3d 754, upon written motion of the prosecuting
> agency, the court, after a hearing described in subdivision (f), shall

8

issue a written order that the false or forged instrument be adjudged void *ab initio* if the court determines that an order is appropriate under applicable law. The order shall state whether the instrument is false or forged, or both false and forged, and describe the nature of the falsity or forgery. A copy of the instrument shall be attached to the order at the time it is issued by the court and a certified copy of the order shall be filed, registered, or recorded at the appropriate public office by the prosecuting agency."  (§ 115, subd. (e)(1).)

Here, Astorga-Lider pled guilty to two counts that she violated section 115, subdivision (a) and entered a *Harvey* waiver.  One of those counts (count 7) related to the Deo Deed of Trust.  The superior court found that the Lorenzanas were "crime victims as a matter of law."  The court also found, after "[c]onsidering all the available information presented by all parties," the Lorenzanas "believed the documents they signed to be substantially different from their true nature."  Thus, relying on *Buck v. Superior Court of Orange County* (1965) 232 Cal.App.2d 153 (*Buck*), the court found the Deo Deed of Trust to be a forgery as a matter of law, and thus, void *ab initio*.

Deo maintains the court erred in concluding the Deo Deed of Trust was forged because the undisputed evidence is that the Lorenzanas signed the various documents related to the Deo loan, including the Deo Deed of Trust.  In other words, Deo claims the Lorenzanas' respective signatures on the deed of trust are authentic; thus, the deed of trust cannot be considered a forgery.  Deo's argument fails under *Buck*, *supra*, 232 Cal.App.2d 153.

In *Buck*, the victims were tricked into signing a blank deed of trust by an aluminum siding salesman.  When the salesman presented a purchase contract for signature, he included among the papers a blank deed of trust, which the victims signed.

9

The missing information was later supplied to the deed of trust. (*Buck*, *supra*, 232 Cal.App.2d at pp. 156-157.) The issue on appeal was whether the salesman committed a forgery when he tricked the victims into signing the blank deed of trust. This court concluded he had, reasoning: "Where a person who has no intention of selling or encumbering his property is induced by some trick or device to sign a paper having such effect, believing that paper to be a substantially different instrument, the paper so signed is just as much a forgery as it would have been had the signature been forged." (*Id*. at p. 162.)

We agree with the superior court that *Buck* is instructive here. Like the victims in *Buck*, the Lorenzanas believed the Deo Deed of Trust they were signing was substantially different from what it actually was. Moreover, the Lorenzanas had no intention of encumbering the Wittman Property with the Deo loan or Deo Deed of Trust. To the contrary, they believed they were purchasing the Wittman Property with cash from the proceeds of the Corrals' loan with Bank of the Internet. The superior court found that they were not aware that they were borrowing additional money to be secured by the Wittman Property. Thus, the Deo Deed of Trust was a forgery. (See *Buck*, *supra*, 232 Cal.App.2d at p. 162; accord *People v. Parker* (1967) 255 Cal.App.2d 664, 672; *People v. Johnson* (1966) 247 Cal.App.2d 331, 337; *People v. Bresin* (1966) 245 Cal.App.2d 232, 238-240; *People v. Carson* (1966) 240 Cal.App.2d 477, 480.)

Nevertheless, relying on *People v. Denham* (2013) 218 Cal.App.4th 800 (*Denham*), Deo contends the Deo Deed of Trust is not void because it does not involve the transfer of an interest in the Wittman Property that the Lorenzanas did not have the

10

capacity to convey. Alternatively stated, Deo asserts only wild deeds (deeds wherein the grantor has no interest in the property to convey) may be found void under section 115. We disagree and do not read *Denham* as creating any rule that would prohibit us from following *Buck*, *supra*, 232 Cal.App.2d 153 on the record before us.[5]

In *Denham*, *supra*, 218 Cal.App.4th at pages 804 to 807, the defendant recorded quitclaim deeds and homestead declarations on nine properties that he believed were abandoned to acquire them via adverse possession. The defendant placed tenants at the properties. (*Id.* at pp. 805-806, 807.) The defendant had no claim of title to or interest in the properties (*id.* at p. 807) and was convicted of 20 counts of violating section 115 (*Denman*, at p. 804).

Because the defendant did not have an interest to transfer, he argued that the quitclaim deeds were not false or fraudulent. (*Denham*, *supra*, 218 Cal.App.4th at p. 807.) The appellate court disagreed, reasoning:

> "While defendant is technically correct that he attested in the quitclaim deed that he was only transferring whatever title or interest he possessed, it was clear based on the evidence he had absolutely no interest in the property. The documents themselves were false in that they transferred an interest that he did not have to himself and then he recorded the document, clouding the title of the true property owners. Adopting defendant's reasoning would be in direct contradiction with the purpose behind section 115 to preserve and protect the integrity of public records. Based on the purpose of the statute and the fact that section 115 has been broadly construed, the

---

5       We note that nowhere in his opening or reply briefs does Deo discuss or even address *Buck*, *supra*, 232 Cal.App.2d 153. This omission is curious because the People relied on *Buck* below as did the superior court. And the People cite to *Buck* in the respondent's brief. Moreover, *Buck* is an opinion from our district that has not been overturned. We thus follow that case.

quitclaim deeds could reasonably be considered false documents by the jury." (*Denham*, at p. 809.)

Thus, *Denham* presents a specific factual situation to which section 115 applies (i.e., the defendant preparing and recording quit claim deeds involving property to which he has no interest). There is nothing in that case that limits the application of section 115 only to wild deeds. Further, *Denham* does not call into question the validity of *Buck*, *supra*, 232 Cal.App.2d 153. In fact, the court in *Denham* did not discuss or even cite to *Buck*. As such, *Denham*, *supra*, 218 Cal.App.4th 800 is not instructive here.

Additionally, we are not persuaded by Deo's argument that the Deo Deed of Trust is only voidable, not void. Deo bases this contention on two claims: (1) the Lorenzanas were negligent in signing the Deo loan documents, including the Deo Deed of Trust; and (2) Deo is a bona fide encumbrancer who engaged in no untoward conduct. In support of his position, Deo notes that, under California law, one who signs a document is presumed to know its contents and cannot escape from being bound by contending he or she did not read the document. (See *Stewart v. Preston Pipeline Inc.* (2005) 134 Cal.App.4th 1565, 1588-1589.)

Similarly, Deo also argues that where a person is aware of what he or she is executing but has been induced to sign a deed of trust through fraudulent misrepresentations, the deed is merely voidable not void. (See *Fallon v. Triangle Management Servs., Inc.* (1985) 169 Cal.App.3d 1103, 1106.) These arguments, based on civil quiet title and contract law principles, are not of the moment.

12

Deo's argument that the Deo Deed of Trust is voidable not void asks us to ignore the criminal circumstances giving rise to section 115 here. Not surprisingly, none of the cases on which Deo relies address the situation where the person who executes a deed of trust is a crime victim. Nor does Deo explain why civil contract and quiet title law should trump section 115. Indeed, the superior court observed that the People's motion under section 115, subdivision (e) raised issues that were "different from that of a title dispute arising in a purely civil context, where less information is available to resolve factual disputes without extensive discovery." The court further explained, "Here, for example, available information includes substantial Grand Jury testimony leading to the Indictment, as well as [Astorga-Lider's] judicial admissions underlying her guilty pleas." Thus, the superior court explicitly described why the People's motion was different than a civil title dispute or quiet title action. Deo simply glosses over the superior court's distinction. More importantly, Deo has not explained why the superior court's reasoning is incorrect. In short, he has not illustrated why section 115 does not apply to the instant action or why we should follow general contract law and disregard the undisputed criminal activity leading the Lorenzanas to sign the Deo Deed of Trust. As Deo has the burden to show error below (see *People v. Nero* (2010) 181 Cal.App.4th 504, 510, fn. 11), these shortcomings are fatal to his appeal.

Finally, we disagree with Deo's assertion that the superior court erred below by resolving the dispute under section 115 because civil court is "a more appropriate forum for adjudication of the validity of the Deo Deed of Trust." Deo represents that he filed a civil quiet title action on October 10, 2017 to determine and enforce his rights under the

13

Deo Deed of Trust, but he provides no authority that a criminal court addressing a motion under section 115 must defer to an ongoing civil quiet title action. In fact, section 115 deals with the possibility of a pending civil suit:

> "If, prior to the hearing on the motion, any person or party files a quiet title action that seeks a judicial determination of the validity of the same false or forged instrument that is the subject of the motion, or the status of an interested party as a bona fide purchaser of, or bona fide holder of an encumbrance on, the property affected by the false or forged instrument, the court may consider that as an additional but not dispositive factor in making its determination under subdivision (e); provided, however, that a final judgment previously entered in that quiet title action shall be followed to the extent otherwise required by law." (§ 115, subd. (f)(9)(B).)

Therefore, section 115 instructs the court to consider the "additional" factor of a civil suit but makes clear that such a factor is not "dispositive." (§ 115, subd. (f)(9)(B).) Accordingly, the superior court did not err below by granting the People's motion under section 115 instead of deferring to the ongoing civil quiet title action. It was well within the superior court's discretion to proceed under section 115 and not wait until the civil suit was resolved.

III

DEO'S CONSTITUTIONAL CLAIMS

Deo additionally asserts that his due process rights under the California and federal constitutions were violated because the superior court's order under section 115 was "wholly contrary to established California law," and he "was deprived of his opportunity to confront witnesses . . . during the grand jury proceedings upon which the court's order[] [was] based." We disagree. As we discuss above, the superior court's

14

order was not contrary to California law. Moreover, Deo was presented with several opportunities to oppose the People's motion, present evidence (including deposition testimony of the Lorenzanas), and challenge the evidence relied on by the People. And Deo has not provided any authority where a third party has a due process right to question witnesses in a grand jury proceeding. On this record, we conclude Deo's due process claims are without merit.

Similarly, we are not persuaded by Deo's assertion that the superior court's order voiding the Deo Deed of Trust constituted a taking without just compensation under the Fifth Amendment of the United States Constitution. Because the superior court correctly found that the Deo Deed of Trust was void, that void document passed no title to Deo upon which he could claim a property interest. Thus, Deo's claim of an unlawful taking necessarily fails.

DISPOSITION

The order is affirmed.


HUFFMAN, Acting P. J.

WE CONCUR:


HALLER, J.


O'ROURKE, J.


15

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>YOLANDA ASTORGA-LIDER,<br><br>    Defendant;<br><br>SUNIL DEO,<br><br>    Real Party in Interest and Appellant. | D073992<br><br>(Super. Ct. No. SCD266414)<br><br>ORDER CERTIFYING OPINION<br>FOR PUBLICATION |

THE COURT:

The opinion in this case filed May 2, 2019, was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the request pursuant to rule 8.1120(a) for publication is GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to Be Published in the Official Reports" appearing on page one of said opinion be deleted and the opinion herein be published in the Official Reports.

_____

HUFFMAN, Acting P. J.

Copies to: All parties

2