Filed 11/16/21  P. v. Rojas CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JAMES ANTHONY ROJAS,<br><br>    Defendant and Appellant. | 2d Crim. No. B304706<br>(Super. Ct. No. 2017037935)<br>(Ventura County) |

James Anthony Rojas appeals his conviction, after a non-jury trial, of two counts of unlawful practices by a foreclosure consultant (Civ. Code, § 2945.4, subd. (a)), six counts of recording false instruments (Pen. Code, § 115, subd. (a))[1], and one count of grand theft of real property.  (§ 487, subd. (a).)  The trial court further found true a sentence enhancement allegation that the felonies were related and included a material element of fraud or embezzlement.  (§ 186.11, subd. (a)(2).)  It sentenced appellant to

---

[1] All statutory references are to the Penal Code unless otherwise stated.

a total term in state prison of 13 years, 4 months, including a 5-year term for the section 186.11 enhancement. Appellant contends: there is no substantial evidence he knowingly recorded false documents; section 654 bars the imposition of punishment for both grand theft of real property and filing a false deed to the same property; and the trial court should not have included the foreclosure consultant offenses in the aggregation of felonies for purposes of section 186.11. We affirm.

## FACTS

Appellant convinced five separate property owners that he could help them avoid foreclosure or succeed in real estate litigation. He then recorded documents in the chain of title to the clients' real property, to force them to pay him money he claimed to be owed.

<u>Gernote and Eleanor Wade</u>: The Wades owned a house on Hemlock Street in Oxnard. After Gernote Wade retired, they fell behind on their mortgage payments and were served with a notice of default in October 2016.

Gernote Wade was referred to appellant through a postcard he received in the mail. Appellant advised Wade that he could delay the foreclosure by filing bankruptcy or by getting an investor to buy the house.

Appellant also talked about investing in the property himself, and then building a multi-family addition onto the existing house. In his plan, the Wades would move to the property and later improve it, giving them some income. Appellant sent Wade a list of properties that fit his investment plan. Wade was supposed to find out whether the properties were zoned for multi-family development. Appellant also instructed Wade to deposit about $1,300 each month into an account that

appellant controlled. Wade made the deposits from May 2017 to November or December 2017. He testified that he never understood how he could afford to buy any of these properties or remodel them, but appellant "was saying that he could be the lender, the builder, and stuff like that. And so I went along with it."

In May 2017, at appellant's instruction, the Wades signed a grant deed conveying their property to "Wounded Warriors of America Corp."[2] and to "Atlantic Funding." Both of these entities were controlled by appellant. The Wades did not receive any money from appellant, "Wounded Warriors" or "Atlantic Funding" in return for signing the deed.

On July 13, 2017, appellant recorded a deed of trust against the Wades' home, reflecting a debt of $25,000 owed by "Wounded Warriors of America Corp." to "Global Funding." The Wades did not authorize anyone to record this document. They did not borrow or receive $25,000 from anyone.

In November 2017, the Wades' house was sold at a foreclosure auction pursuant to the notice of default originally served in October 2016.

Ruth Armstrong. Ruth Armstrong was in her early 80s and a retired real estate broker when an acquaintance, Megan Zucaro, introduced her to appellant. At the time, the Westlake Village house that Armstrong had owned and lived in for more than 40 years was in foreclosure. She wanted to sell the house. Zucaro couldn't complete the sale, but told Armstrong

---

[2] Appellant created and controlled a corporation named "Wounded Warriors of America Corp." It is in no way affiliated with the nationally recognized nonprofit organization, Wounded Warrior Project.

that appellant, who she described as her "investor," would be able to. Armstrong met with appellant at his office. He advised her that the loan in default was fraudulent. Appellant offered to help Armstrong by referring the matter to a lawyer. Armstrong left the meeting before agreeing to anything.

Several months later, another acquaintance of Armstrong's, Donnie Williams, convinced Armstrong to meet with appellant again. At this meeting, appellant said he wanted to buy her house using a loan from "Wounded Warriors." He had already opened an escrow account for the transaction. Armstrong initially agreed to the sale. She cancelled it after contacting the legitimate Wounded Warriors organization and learning that it does not make real estate loans.

On November 8, 2018, appellant recorded a notice of intent to preserve interest against Armstrong's property under the name Janitorial Services and Distribution Inc., a business he controlled. The document did not describe the nature of Janitorial Services' interest in Armstrong's house. She did not authorize the recording, never did business with Janitorial Services, and did not know it was affiliated with appellant. The notice of intent to preserve interest prevented Armstrong from selling her house until she got it expunged.

Alva Jones. Alva Jones, a retired dentist in his mid-80s, owned two parcels of undeveloped property on Marine View Lane in Moorpark. Jones purchased the property in 1992 and intended to develop part of it with tract homes. By 2013, however, he had borrowed against the land many times and it was encumbered by at least six mortgages and liens totaling more than $1,400,000. When Jones fell behind on paying those debts, one of the lenders initiated foreclosure proceedings.

4

Megan Zucaro recommended that Jones contact appellant because, she said, appellant had the resources to develop the property. Jones had another offer to buy the property, but he thought appellant had a better plan. Appellant proposed that he would be the builder, with help from Zucaro and another mutual friend, Randy Goss. He opened an escrow in the name of Sugira Ltd., a business he owned, to purchase the property for $1,860,000.

Appellant later told Jones that he needed Jones to sign a grant deed conveying ownership of the property to appellant before the closing date and outside of the escrow. Appellant said he would hand-deliver the deed to the escrow agent in a few days and assured appellant he had the funds needed to buy the property. Jones signed the deed, believing it would not be recorded until he was paid.

In October 2018, appellant recorded the grant deed conveying ownership of Jones' property to Sugari. He never paid Jones the $1,860,000 they had agreed to. In November 2018, appellant recorded another grant deed, conveying a 70% interest in the property to Sugari and a 30% interest in it to "Texas Tart," another business entity owned by appellant. Jones did not authorize this transfer. In December, appellant had Janitorial Services record a notice of intent to preserve interest against the property. Jones did not authorize that recording.

Appellant gave Jones two checks for $5,000, each payable to creditors, and a check for $1,000 that Jones used for personal expenses. Jones understood the money would be repaid after escrow closed on the property. Appellant also referred Jones to an attorney, Richard Hofman. Jones understood

Hofman's fees would also be paid out of escrow. None of these transactions were documented or secured by the property.

When Jones learned the deed had been recorded, he went to the police. With their help, he made a recorded call to appellant. Appellant offered to sign the property back to Jones once Jones paid him $11,000.

Pete Becerra. Pete Becerra was 90 years at the time of trial. He owned property in Piru that was appraised at $2,000,000. In October 2018, Becerra conveyed 50% of the property to Megan Zucaro because they were going to develop it together. This deed was later voided. In January 2019, appellant caused Janitorial Services to record a notice of intent to preserve interest against the property. Becerra had never heard of Janitorial Services or of appellant.

Cindra Ranieri. Cindra Ranieri worked as a mortgage broker for commercial property. Ranieri knew appellant because he offered to help her recover money in a real estate dispute. Ranieri "flipped" a house in Malibu with some other investors and believed they owed her money. Appellant and Ranieri agreed appellant would pay Ranieri a portion of whatever money he recovered from them. The dispute was settled and appellant mailed Ranieri a check. It bounced. She never received any money from appellant.

From 2016 to 2019, Ranieri owned a house in Westlake Village. In 2018, she learned that a notice of intent to preserve interest had been recorded against her property by Janitorial Services. Ranieri had never heard of Janitorial Services or borrowed money from it. She did not authorize Janitorial Services to record the notice.

The Defense Case. Rhonda Walker, the attorney appellant referred to Ruth Armstrong, testified that appellant asked her to prepare an opinion letter about Armstrong's mortgage, which he believed was fraudulent. Appellant paid her fee for doing so. Although Walker concluded the mortgage was fraudulent and offered to represent Armstrong in litigation against the lender, Armstrong did not retain her or pay any of her fee.

Appellant testified in his own defense. He testified that he made money through construction and money lending. He does not have a law license, a real estate broker's or agent's license or a contractor's license.

Appellant explained that he recorded the notice of intent against Becerra's property because he knew Zucaro owned an interest in the property and she owed appellant money. He hoped the notice of intent would cause Zucaro to repay him. Appellant did not intend to harm Becerra.

Appellant testified that he started using the notice of intent to preserve interest to collect debts in 2006. Before doing so, he consulted three attorneys "just to make sure that [he was] not crossing the line, that it is a legal document to do." Recording the document created a "cloud on title" to the property. Owners would negotiate with appellant to remove the cloud. On one occasion, a notice appellant recorded was expunged. Otherwise, he got paid by the property owners.

Ranieri and appellant had an agreement that he would finance her lawsuit against the other investors in the Malibu house. She owed him $27,650. Appellant learned she owned another house, so he filed a notice of intent to preserve interest against that house to recover the fees Ranieri owed him.

7

Appellant advised Mr. Wade to file for bankruptcy to delay the sale and then helped him prepare the documents required for an emergency stay. This tactic succeeded in briefly delaying the sale.

He was interested in the Wades' house because it sat on a large lot. He thought "Wounded Warriors" could finance and build multiple residences onto the existing house that he would then rent to veterans. This would increase the property's value. The Wades would receive about $9000 that they could use to rent or buy another house. One of the conditions of this plan was that the Wades had to move, but they did not.

The Wades signed a grant deed conveying their house to appellant's "Wounded Warriors." Appellant planned to record it to delay the foreclosure if the Wades' other efforts were not successful. Then, "Wounded Warriors" would bring the mortgage payments current. He did not believe the grant deed was a bona fide transfer of title because it occurred outside of escrow and was not insured by a title company.

Appellant also recorded a deed of trust documenting a $25,000 loan from "Cal Fed" to "Wounded Warriors," secured by the property. He recorded the grant deed and deed of trust to show that "Cal Fed" was "in play" to provide $25,000 to rehabilitate the property. Appellant struggled to explain how the Wades would have benefited from his plan, since they had no money to buy a new property and were projected to receive only $9,000 from the sale of their house. At one point, the trial court referred to appellant's explanations as "word salad."

Appellant explained that building an addition on to the Wades' house would increase the value of the property. The lender would then delay foreclosure, appellant thought, because

it would recognize the "future value" of the increased square footage he was building. He would borrow against the increased equity to pay off the existing mortgage. Appellant believed "Wounded Warrior of America Corp." had the funds needed to buy another property for the Wades.

Armstrong had no money and a predatory second trust deed on her Westlake Village house. Appellant offered to finance litigation against the lender, if Armstrong got opinion letters from two attorneys supporting her claims. He understood Armstrong would pay for the opinion letters. Because she did not, appellant paid the fees. He also lent Armstrong $8,800 for personal expenses. When she did not repay him, appellant filed the notice of intent to preserve interest.

Appellant testified that he intended to help Jones develop his Moorpark property. The development failed because the debts secured by the property were just too high. He had Jones sign the grant deed but did not intend to record it. Appellant needed the deed so he could get information from the city about subdividing the property. When a foreclosure sale was imminent, appellant recorded the deed to delay the sale. He never intended to take the property from Jones. Appellant recorded the notice of intent to preserve interest because Jones did not repay the about $10,000 appellant provided to him.

DISCUSSION

Appellant contends: there is no substantial evidence that appellant knowingly recorded false notices of intent to preserve interest; section 654 bars appellant's conviction of both grand theft of the Jones property and recording a false grant deed to the same property; and his convictions of violating Civil Code section 2945.4 should not have been included in the aggregation

9

of felonies for purposes of section 186.11.  Finally, appellant notes there would be no felony convictions to aggregate under section 186.11 if we reverse his convictions for lack of substantial evidence.

   <u>Recording False Documents</u>.  Appellant contends there is insufficient evidence to prove he knowingly recorded false documents because the documents he recorded had genuine signatures and reflected legitimate debts owed by the property owners.  Our standard of review is familiar.  "When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence – that is, evidence that is reasonable, credible, and of solid value – from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.)  We determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (*Jackson v. Virginia* (1979) 443 U.S. 307, 319.)  We presume in support of the judgment the existence of every fact that may reasonably be deduced from the evidence, whether direct or circumstantial. (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.)

   Section 115 provides, "Every person who knowingly procures or offers any false or forged instrument to be . . . recorded in any public office within this state, which instrument, if genuine, might be . . . recorded under any law of this state or of the United States, is guilty of a felony."  The purpose of this statute is "to prevent the recordation of spurious documents

10

knowingly offered for record." (*Generes v. Justice Court* (1980) 106 Cal.App.3d 678, 681-682 (*Generes*).)

In *Generes* the defendant recorded "a false grant deed conveying from herself to herself a false easement . . . ." (*Generes, supra,* 106 Cal.App.3d at p. 681.) The court of appeal held the deed was false within the meaning of section 115 because Generes had no ownership interest in the property. "Here the lack of an ownership interest in the land goes to the deception itself. If Generes did not own the interest she purported to convey, the instrument she filed was clearly false. Having no right to grant or convey an easement, her recording of a deed transferring an easement would establish a cloud on the title of those persons who lawfully owned interests in the land." (*Generes*, at p. 682.)

Similarly, *People v. Denman* (2013) 218 Cal.App.4th 800 (*Denman*), held the defendant violated section 115 when he recorded nine different quitclaim deeds transferring from himself to himself "all my rights, title and interest in the real property" described in each deed. The defendant had no interest in any of the properties at issue. He contended the deeds were not false because he never represented that he owned the properties. (*Denman*, at p. 806.) The court of appeal disagreed. "Here, defendant filed quitclaim deeds to himself on property to which he admitted he had no title or interest. . . . The documents themselves were false in that they transferred an interest that he did not have to himself and then he recorded the document, clouding the title of the true property owners." (*Id.* at p. 809.)

*People v. Schmidt* (2019) 41 Cal.App.5th 1042 (*Schmidt*), reached a different conclusion. There, the defendant fraudulently induced financially distressed property owners to

11

sign quitclaim deeds transferring their properties to trusts controlled by the defendant. The court of appeal held recording the deeds did not violate section 115 because the grantors actually owned the properties at issue and could legally convey their interests to the defendant. "In the absence of evidence that the quitclaim deeds . . . were forged or false in the sense that they would not convey title to a bona fide purchaser, we must conclude that they were operative, and must therefore be considered 'genuine.' [Citation.] Being genuine, the quitclaim deeds cannot be said to have been 'false' within the meaning of section 115." (*Schmidt,* at p. 1058.)

Here, appellant was convicted on count 3 of recording a false deed of trust to the Wade property. Substantial evidence supports the finding that the deed was false for the reason stated in *Generes, supra,* and *Denman, supra*: the interest reflected in the document did not exist. The deed of trust falsely represented that one of appellant's businesses, "Wounded Warriors of America Corp.," owed $25,000 to "Global Funding," another of appellant's fictitious businesses, and that the debt was secured by the Wade property. These representations were false. "Wounded Warriors" did not own a legitimate interest in the Wade property. Appellant admitted that "Wounded Warriors" did not borrow $25,000 from "Global Funding." There was no agreement securing any such debt against the property. No money ever changed hands. Everything about the deed of trust was false. Substantial evidence supports appellant's conviction on count 3.

Substantial evidence supports appellant's conviction on count 6 for the same reason. Appellant fraudulently induced Jones to sign a grant deed transferring his property to appellant's

fictitious business, Sugira Limited, LLC. Sugira then executed another grant deed purporting to transfer the property from itself to itself and "Texas Tart," another bogus corporation owned by appellant. Count 6 relates to the second deed. This deed is a false document because Sugira owned no legitimate interest in the property and the grantors were not bona fide purchasers. The deed was recorded solely for the purpose of clouding title to Jones' property. (*Denman, supra,* 218 Cal.App.4th at p. 809; *Generes, supra,* 106 Cal.App.3d at p. 681.)

Appellant was convicted on Count 7 of recording a false notice of intent to preserve interest with regard to the Jones property. The notice identifies appellant as the claimant and the nature of his interest as the false grant deed alleged in Count 6. Appellant admitted that the notice of intent to preserve interest does not reference any money owed to him by Jones. Jones did not owe appellant money and had no debt to appellant that was secured by his property. Appellant thus had no interest in the property to "preserve" by recording the notice of intent to preserve interest. This is substantial evidence that the document is false within the meaning of section 115. (*Denman, supra*, 218 Cal.App.4th at p. 809; *Generes, supra,* 106 Cal.App.3d at p. 682.)

Appellant was also convicted in counts 4, 8 and 9 of recording false notices of intent to preserve interest with regard to the Armstrong, Becerra and Ranieri properties. Each document listed Janitorial Services and Distribution Inc., a corporation owned by appellant, as the claimant and described the interest held by the claimant as a grant deed. Each document is false for the same reasons: the property owner never owed money to Janitorial Services, did not use their property to secure any debt to Janitorial Services and never executed a grant

13

deed in favor of that entity. Appellant caused Janitorial Services to record these documents in the chain of title to the properties, but owned no interest in those properties or any debt secured by them. This is substantial evidence supporting the trial court's verdict on counts 4, 8 and 9. (*Denman, supra*, 218 Cal.App.4th at p. 809; *Generes, supra,* 106 Cal.App.3d at p. 682.)

*Schmidt, supra,* 41 Cal.App.5th 1042 is not to the contrary. There, the court determined the defendant had not recorded "false" quitclaim deeds within the meaning of section 115 because the grantors lawfully possessed the interests they transferred. (*Schmidt,* at pp. 1057-1058.) The quitclaim deeds were induced by fraud but were otherwise genuine. "A fraudulently induced deed, though voidable, is nevertheless 'genuine' in the sense that it conveys title and can be relied upon and enforced by a bona fide purchaser." (*Id.* at p. 1058.) Here, by contrast, appellant never lawfully possessed a legitimate interest in any of the real properties at issue. The deed of trust was false because there was no underlying loan. The grant deed was false because the grantor never owned the property at issue and grantees were not bona fide purchasers. The notices of intent to preserve interest were false because the claimant never had a legitimate interest to preserve. *Schmidt* is distinguishable for this reason.

Civil Code section 880.360 provides that a person "shall not record a notice of intent to preserve interest in real property for the purpose of slandering title to the real property." If, in an action to establish or quiet title, the trial court finds that a person recorded a notice of intent for the purpose of slandering title, "the court shall award against the person the cost of the action or proceeding, including a reasonable attorney's fee, and

14

the damages caused by the recording." (*Ibid.*) Appellant contends that Civil Code section 880.360 should be the exclusive remedy for recording a false notice of intent to preserve interest in real property.

Civil Code section 880.360 was enacted in 1982. At that time, the Legislature took no action to repeal or limit the scope of section 115. The Legislature also amended section 115 in 1984, without mentioning Civil Code section 880.360. In the absence of clear legislative direction, we may not conclude the Legislature intended the civil remedy in Civil Code section 880.350 to repeal section 115 by implication. (See, e.g., *Moore v. Superior Court* (2020) 58 Cal.App.5th 561, 574-575.)

Appellant contends section 654 bars his punishment for both grand theft of real property (count 5) and recording a false or fraudulent document relating to the same property (count 7), because the recording was the means by which the grand theft was committed. The argument is without merit. Appellant's conviction on count 7 was not based on the grant deed that formed the basis for his conviction on count 5. Additionally, this involved separate criminal intents and objectives. The sentences imposed do not violate section 654. (*People v. Harrison* (1989) 48 Cal.3d 321, 335 (*Harrison*); *People v. Perry* (2007) 154 Cal.App.4th 1521, 1525.)

Section 654 permits separate punishments for separate crimes. Where a defendant has independent criminal objectives, he may be punished for each crime committed in pursuit of each objective, even if the crimes share common acts. (*Harrison, supra,* 48 Cal.3d at p. 335.) The trial court here imposed separate punishments for grand theft and for recording a false instrument, impliedly finding that appellant committed

15

each offense to further an independent criminal intent or objective. (*People v. Latimer* (1993) 5 Cal.4th 1203, 1208.) We affirm because that implied finding is supported by substantial evidence. (*People v. Osband* (1996) 13 Cal.4th 622, 730.)

Appellant intended to deprive Jones of his property. He accomplished that objective by fraudulently obtaining a grant deed from Jones and then recording the deed. This resulted in his conviction on count 5 of grand theft. Appellant later recorded a notice of intent to preserve interest against the same property, despite the fact that he had no legitimate interest to preserve. This furthered appellant's criminal objective of clouding title to the property, making it more difficult to determine the property's true owner. Recording this false document, not the original grant deed, resulted in appellant's conviction on count 7 of violating section 115. The offenses in counts 5 and 7 involved the recording of different documents to achieve independent criminal objectives. The trial court properly imposed separate punishments for each offense.

Section 186.11 Sentence Enhancement. The trial court imposed a five-year sentence enhancement under section 186.11. Subdivision (a) of section 186.11 authorizes an enhancement term of two, three or five years where a person "commits two or more related felonies, a material element of which is fraud or embezzlement, which involve a pattern of related felony conduct, and the pattern of related felony conduct involves the taking of, or results in the loss by another person . . . of, more than [$100,000] . . . ." Appellant contends the trial court should not have included his convictions of unlawful practices by a foreclosure consultant (Civ. Code, § 2945.4) in the aggregation of felonies for purposes of this enhancement. He

16

contends the Civil Code section 2945.4 offenses do not involve a material element of fraud or embezzlement because conduct that violates the statute "would be legal if performed by an attorney. The statute describes offenses which are *malum prohibitum* rather than *malum in se*." We are not persuaded.

Civil Code section 2945.4 prohibits unfair, deceptive or coercive tactics employed by a person providing paid advice to homeowners with distressed properties. (*In re Phelps* (2001) 93 Cal.App.4th 451, 453-454.) Appellant violated subdivision (a) of section 2945.4 when he received payment from Mr. Wade before completing whatever services he offered to perform on Wade's behalf. He violated subdivision (e) of the statute when he obtained a grant deed to the Wades' property. Substantial evidence supports the trial court's implied finding that each offense involved a material element of fraud. Appellant is not an attorney. He convinced Wade to pay him money and to execute the grant deed by representing that his services would prevent or delay foreclosure, increase the value of their property and help them find another property to invest in. As we have discussed, those representations were false. The trial court did not err in considering these felonies for purposes of the section 186.11 enhancement.

Because we have affirmed appellant's convictions for violating section 115, we need not address appellant's final contention.

CONCLUSION

The judgment is affirmed.

17

NOT TO BE PUBLISHED.

                                           YEGAN, J.

We concur:


GILBERT, P. J.


TANGEMAN, J.

David R. Worley, Judge

Superior Court County of Ventura

_____

Ralph H. Goldsen, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Michael R. Johnsen, Supervising Deputy Attorney General, David E. Madeo, Deputy Attorney General, for Plaintiff and Respondent.